STATE OF NORTH CAROLINA v. HOWARD KEITH THOMPSON AND JIMMY DALE HARDEE

No. 87

(Filed 16 March 1979)

**Searches and Seizures §§ 12, 34— detaining occupants of van for investigation and identification—reasonableness—officer's observation of hashish while leaning into van**

      Officers were reasonably warranted in approaching and detaining the occupants of a van for purposes of investigating their activities and determining their identity where the van and a motorcycle were located at 12:30 a.m. in a public parking area in an isolated region of New Hanover County at the end of a State highway; the officers were aware that break-ins involving a van had recently been reported in the vicinity; the front passenger and side doors of the van were observed to be open; and the officers observed six persons in and around the van, since such facts would justify a reasonable suspicion by the officers that the occupants of the van might be engaged in or connected with criminal activity. Furthermore, an officer's act of leaning into the van through the open front passenger door to obtain identification from the driver after the front passenger had stepped from the van did not constitute an unreasonable intrusion on the expectation of privacy of the van occupants, and the officer's seizure of hashish which he saw in an open, recessed area of the dashboard while leaning into the van was lawful.

      Justice BRITT took no part in the consideration or decision of this case.

      Justice EXUM dissenting.

THIS case is before us on appeal from a decision of the Court of Appeals affirming the Judgment of Superior Court, NEW HANOVER County, finding both defendants guilty of felonious possession of hashish. The opinion of the Court of Appeals was by *Britt, Judge,* with *Clark, Judge,* concurring and *Erwin, Judge,* dissenting. Defendants appealed as a matter of right under G.S. 7A-30(2). This case was argued as No. 112 at the Fall Term 1978.

The factual occurrences underlying the convictions of the defendants are amply set out in the opinion of the Court of Appeals at 37 N.C. App. 628, 246 S.E. 2d 827 (1978) and will be restated here only in connection with our consideration of appellants' assignments of error.

Our discussion of the various assignments of error raised by defendants is limited to their common assignment of error to the trial court's refusal to suppress evidence relating to and stem-

ming from the discovery by the investigating officers of a quantity of hashish in an open, recessed area in the dashboard of the van in which the defendants were located at the time the officers approached them. The other assignments of error raised by defendants have been given careful consideration, but we find them to be without merit. Therefore, we affirm and adopt that portion of the opinion of the Court of Appeals directed to them.

The determinative issue with respect to appellants' assignments of error to the admission of evidence relating to and stemming from the discovery of the hashish is whether the initial intrusion by the officers, which put them in a position to see the hashish which they seized, infringed defendants' rights under the Fourth Amendment to the U.S. Constitution. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971), clearly established that objects in the plain view of an officer who has a right to be in the position to have that view may be seized without obtaining a search warrant. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 1067 (1968). "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge v. New Hampshire, supra*, at 466, 91 S.Ct. at 2038, 29 L.Ed. at 583.

Testimony by the officers who arrested defendants, given at a *voir dire*, pre-trial hearing, indicated: In the early morning hours of 17 April 1977 at approximately 12:30 a.m., Officers Wolak and Lee, members of the Narcotics Bureau of the New Hanover County Sheriff's Department, were on patrol in the Fort Fisher area of New Hanover County. They pulled their car off the public highway and parked in the lighted parking lot of a public boat landing located near Fort Fisher. The officers observed a motorcycle and a van parked near them. The van and the motorcycle were then moved away from the officers approximately 40 yards. The officers observed six persons in and around the van. Earlier that evening the officers had heard reports of break-ins having occurred in the Fort Fisher area involving the use of a van. Believing the situation warranted investigation, the officers approached the van, driving their car directly up to the side of the van with the car's bright lights on. The interior light in the van was on. The passenger door and side door of the van were open, and the

officers observed two males seated in the two front seats of the van and four persons in the rear. Officer Wolak identified himself and approached the van. He asked the individual seated in the passenger seat in the front of the van, subsequently identified as defendant Thompson, for some identification. As he took the identification defendant Thompson proffered, Officer Wolak asked Thompson to step from the van. After defendant Thompson complied with this request, Officer Wolak asked the individual seated in the driver's seat of the van to produce some identification. As the driver reached in his pocket for his identification, Officer Wolak leaned across the empty passenger seat to get the identification from him. As he did so, he noticed several tinfoil wrappers, one of which was open, in an open, recessed area of the dashboard in front of the passenger's seat where a glove compartment would normally be located. Officer Wolak, whom the court found to be an expert in the identification of narcotics, recognized the substance lying inside the open tinfoil wrapper to be hashish. The court's findings of fact conformed to the testimony of the officers, and the hashish and other evidence discovered as a result of the ensuing arrest and search of the individuals in the van was admitted over objection by the defendants.

*Coleman, Bernholz, and Dickerson, by Steven A. Bernholz and Patricia Stanford Hunt for defendant-appellant Thompson.*

*Burney, Burney, Barefoot, & Bain, by Roy C. Bain for defendant-appellant Hardee.*

*Attorney General Rufus L. Edmisten, by Associate Attorney S. Lucien Capone III for the State.*

BROCK, Justice.

We observe first that it is problematic whether the officers' conduct in this instance constituted a "seizure", thus invoking the protection of the Fourth Amendment. " 'No one is protected by the Constitution against the mere approach of police officers in a public place.' *United States v. Hill*, 340 F. Supp. 344 (E.D. Pa. 1972)." *State v. Streeter*, 283 N.C. 203, 208, 195 S.E. 2d 502, 506 (1973). Because we consider the officers' conduct to be constitutionally permissible under the standards governing an actual "seizure", however, our consideration will proceed on the assump-

tion that the officers indeed effected a "seizure" of the occupants of the van.

The officers' conduct in this instance is governed by the standards set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). *Terry* involved the constitutionality under the Fourth Amendment of a "stop and frisk" by a police officer. Because there was no "frisk" in this case, we examine only whether the officers were entitled to approach and detain the occupants of the van for purposes of investigation and the reasonableness of their conduct in doing so. The Supreme Court's analysis in *Terry* was "a dual one — whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. at 1879, 20 L.Ed. 2d at 905. The standard set forth in *Terry* for testing the conduct of law enforcement officers in effecting a warrantless "seizure" of an individual is that "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906. In *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed. 2d 612, 617 (1972), the Court reaffirmed the principle of *Terry* that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." The standard set forth in *Terry* and reaffirmed in *Adams* clearly falls short of the traditional notion of probable cause, which is required for an arrest. We believe the standard set forth requires only that the officer have a "reasonable" or "founded" suspicion as justification for a limited investigative seizure. *United States v. Constantine*, 567 F. 2d 266 (4th Cir. 1977); *United States v. Solomon*, 528 F. 2d 88 (9th Cir. 1975). Thus we must examine both the articulable facts known to the officers at the time they determined to approach and investigate the activities of the occupants of the van and the rational inferences which the officers were entitled to draw from those facts. In doing so, however, we do not believe the circumstances should be analyzed in isolation, but that they should be viewed as a whole "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *U.S. v. Hall*, 525 F. 2d 857, 859 (D.C. Cir. 1976).

Relying on the findings of fact on *voir dire* which are supported by competent evidence and thus conclusive, *State v. Crews*, 286 N.C. 41, 209 S.E. 2d 462 (1974), on what facts and inferences was the officers' conduct predicated? The van and a motorcycle were located in a public parking area in an isolated region of New Hanover County at the end of State Highway 421. The hour was late, approximately 12:30 a.m. The officers were aware that break-ins involving a van had been reported recently in the vicinity. The front passenger door and the side door of the van were observed to be open. A not unreasonable inference to be drawn from these empirical facts was that the occupants of the van might be in some way connected with the reports of recent break-ins in the vicinity. Indeed, even absent the reports of recent break-ins, given the late hour, the isolated location of the van in a public place, and the considerable activity around it observed by the officers, the inference might reasonably be drawn that the situation warranted investigation. These facts and the reasonable inferences to be drawn, when viewed as a whole and through the eyes of experienced police officers, would, we believe, justify a reasonable suspicion that the occupants of the van might be engaged in or connected with criminal activity. On that basis, we find that the officers acted within the limits of the Fourth Amendment in approaching the van and seeking identification from the occupants.

Appellants further contend, however, that Officer Wolak's act of leaning into the van through the open front passenger door after defendant Thompson had stepped from the vehicle constituted an unreasonable intrusion of their expectation of privacy and thus a violation of their Fourth Amendment rights. With this contention we cannot agree. Officer Wolak's purpose in leaning into the van and reaching across to the driver was to obtain the identification the driver had been asked to show him. It was this act which put Officer Wolak in a position to observe, in plain view, the hashish. We cannot say, however, that the officer's conduct was unrelated in scope to the circumstances which justified the initial approach to investigate. *Terry v. Ohio, supra.* The court found as a fact that Officer Wolak asked defendant Thompson to step out, and Thompson voluntarily complied with that request. From the position in which Officer Wolak was standing we cannot say it was unreasonable for him to reach across the seat

for the driver's identification. *See United States v. Anderson*, 552 F. 2d 1296 (8th Cir. 1977); *United States v. Bradshaw*, 490 F. 2d 1097 (4th Cir. 1974). Therefore Officer Wolak had a right to be in the position he was in when he discovered, in plain view, the hashish. Evidence of that discovery and other evidence subsequently discovered as a result was properly admitted. The opinion of the Court of Appeals is

Affirmed.

Justice BRITT took no part in the consideration or decision of this case.

Justice EXUM dissenting.

I fully agree with the majority's analysis of the legal problem presented. The majority has correctly identified the applicable legal principles by which the conduct of the police officers here must be judged. There was, in my view, a seizure of the occupants of the van, particularly the defendant Thompson, pursuant to which Officer Wolak got himself in a position to observe the hashish "in plain view" inside the van. The majority so assumes.

The question, therefore, is whether this seizure was justified under the circumstances present here. The majority concludes that it was. It is with this conclusion that I disagree. The state has shown no "specific and articulable facts," *Terry v. Ohio*, 392 U.S. 1 (1968), giving rise to inferences which in turn could form the basis of a reasonable or founded suspicion even through the eyes of reasonable and trained officers that the occupants of the van might have been engaged in particular criminal activity so as to justify the officers' intrusion.

It is important first to note that at the time of this incident the Wilmington Azalea Festival, an old and well-known celebration marking the coming of spring and blossoming of azaleas, was in progress. The festival attracts tens of thousands of people to the area. Overnight accommodations are at an expensive premium and thousands of young people opt for traveling and sleeping in van-type motor vehicles as the young people in this case were obviously doing in a parking area open to the public at large. The

occupants of the van were equipped with sleeping bags. The parking area was at the very end of U.S. Highway 421 close to a boat ramp — a natural place under the circumstances to settle in for the night.

I simply cannot conclude, as the majority does, that the mere existence of this van and its occupants at the location described somehow gives rise to a reasonable suspicion that criminal activity was afoot. Neither do general reports of unspecified "break-ins" in the area involving an unspecified van of which the officers had no description give rise to a reasonable suspicion that *this* van and *these* persons were engaged in such activity.

The majority relies on *Terry v. Ohio, supra,* 392 U.S. 1, and *Adams v. Williams,* 407 U.S. 143 (1972). Both these cases are distinguishable. In *Terry* a policeman of some 39 years experience observed three men standing on a corner for ten to twelve minutes. Two of them took turns walking down the street to a particular store and looking in the window. They would then return and confer. This pattern was repeated ten to twelve times. This behavior led the officer to believe they were planning a robbery. They were, in his words, " 'casing a job, a stick-up.' " *Id.* at 6. Upon going to them to investigate, the officer frisked defendant Terry, found a gun on him and placed him under arrest. The United States Supreme Court concluded that his actions were reasonable and justified under the Fourth Amendment.

Likewise, in *Adams v. Williams, supra,* there was a reasonable suspicion that a suspect had committed, or was about to commit, a particular crime. In *Adams* a police officer was on patrol in a "high-crime neighborhood." He received a tip from an informant that an individual seated in a nearby car was carrying narcotics and had a gun at his waist. On approaching the car, the officer reached in and removed a loaded revolver from the individual's waistband. He then placed him under arrest and upon searching the car found other weapons and narcotics. Again, his actions were found sustainable under the Fourth Amendment.

In both *Terry* and *Adams,* police officers were possessed of specific facts which indicated that specific indivduals might have committed or were planning to commit particular crimes. While these facts were not considered sufficient to rise to the level of

probable cause, they were enough to give rise in each case to a reasonable suspicion in the officers' minds. There are no such facts in this case.

This case is instead quite like *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975), which I believe controls it. There officers of the Border Patrol were on lookout near the Mexican border late at night for illegal aliens. They pursued defendant's car and stopped it, finding two illegal aliens in it. Defendant was arrested and convicted for transporting illegal immigrants. Aside from the facts that it was late at night and near the border (i.e., at a time and place where such illegal activity would normally occur), the only reason the officers could articulate for having pursued and stopped the car was that the occupants appeared to be of Mexican descent. On appeal, the United States Supreme Court reversed defendant's conviction. It held: (1) while Border Patrol officers could make roving-patrol stops they had to have a reasonable suspicion to do so; and (2) while appearance of Mexican descent was a relevant factor it was not under these circumstances justification for a stop.

In the case at bar, the officers were unable to point to *any* untoward activity on the part of the individuals involved as the officers in both *Terry* and *Adams* were able to do. Instead they could articulate only a generalized suspicion based apparently on the time, the place, and the facts that "a van" was involved and they had reports of unspecified "break-ins" involving a van in the area. Lacking more specific information about the break-ins which would tie this particular van or even one fitting its description to the "break-ins," the officers here had no more reason to suspect criminal activity than the Border Patrol in *Brignoni-Ponce*.

For these reasons I believe there was error in failing to allow defendants' motion to suppress the hashish seized and I vote for a new trial.