State v. Lombardo

---

STATE OF NORTH CAROLINA v. DENNIS LOMBARDO

No. 802SC1203

(Filed 2 June 1981)

**Criminal Law § 143.11; Searches and Seizures § 39— probation revocation hearing — evidence improperly suppressed**

In a proceeding to determine whether defendant had violated a condition of his probation, the superior court erred in granting defendant's motion to suppress evidence seized by Florida authorities where the record before the superior court clearly established that the search of defendant's luggage in a Miami airport was made pursuant to a search warrant; the search warrant did

not appear of record, and the record demonstrated that defendant offered no evidence of facts with which to overcome the presumption of regularity of the search warrant or to overcome the resulting prima facie evidence of the reasonableness of the search; and the record disclosed that Florida officers had reasonable grounds to believe that defendant's luggage contained contraband and their affidavit would be sufficient to support a finding of probable cause for the issuance of the search warrant by the Florida judge.

APPEAL by the State from *Brown, Judge.* Order entered 3 October 1980 in Superior Court, HYDE County. Heard in the Court of Appeals 28 April 1981.

This is an appeal from an order, entered in the course of a proceeding to determine whether defendant had violated a condition of his probation, which allowed defendant's motion to suppress evidence seized by Florida authorities in Miami on 28 August 1979.

Defendant was convicted of felonious sale and delivery of marijuana, a violation of G.S. § 90-95(a)(1), on 13 August 1979 in the Hyde County Superior Court. A prison sentence of not less than five years nor more than five years was imposed, but was suspended upon compliance with several conditions, including the following "special condition" of probation:

> 3. During the period of probation you are not to have in your possession or under your control any controlled substances as defined by Chapter 90 of the N.C. General Statutes, unless it is duly prescribed by an authorized physician and dispensed by a physician or a pharmacist.

*See State v. Trapper,* 48 N.C. App. 481, 269 S.E. 2d 680, *appeal dismissed,* 301 N.C. 405, 273 S.E. 2d 450 (1980). On 29 November 1979, defendant's probation officer signed a probation violation report stating that the officer had probable cause to believe that defendant violated the above-quoted condition in that defendant "was arrested at Miami International Airport for possession of marijuana by Officers Bill Johnson and Tom Dazevedo [sic] of the Dade County Public Safety Department. . . ." Subsequently, on 24 January 1980, defendant was arrested in Florida and served with a motion for revocation of probation.

On 25 February 1980, before the hearing on the probation violation report, defendant made a motion in the Hyde County Superior Court seeking to suppress "any and all evidence" taken from defendant in Miami, Florida on 28 August 1979, "and any

evidence obtained directly or indirectly therefrom." Defendant gave as "grounds" for his motion that the "detainment and interrogation of the Defendant at the Miami International Airport on August 28, 1979, and the seizure and search of his baggage" were in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as G.S. § 15A-974. Defendant supported this motion with a "Motion to Suppress and Incorporated Memorandum of Law" based upon the Miami incident, which he had filed in the Eleventh Judicial Circuit of the State of Florida, as well as with an "Order Granting Motion to Suppress" entered by the County Court for Dade County, Florida on 15 February 1980, in which that court found that defendant's detention and seizure were based upon "insufficient articulable facts to pass constitutional muster." The parties agreed upon a "statement of facts" as set forth in defendant's "Motion to Suppress and Incorporated Memorandum of Law" and the report of the Dade County, Florida investigating officer dated 28 August 1979, which was filed by the State. The uncontroverted facts disclose the following:

At 5:05 p.m. on 28 August 1979, defendant was observed by Officer William Johnson of the Dade County Public Safety Department on a sidewalk outside the National Airlines Terminal at Miami International Airport. Defendant, carrying a foldover suitbag and a briefcase in one hand and a National Airlines ticket in the other, appeared nervous and impatient. After getting the attention of a National Airlines porter, defendant set down his luggage and began talking with the porter. Officer Johnson moved closer, and saw that defendant's ticket bore a baggage claim check with the serial number "772025." Johnson then learned that defendant had checked a suitcase onto a flight and that defendant was en route to New Orleans.

Officer Johnson observed that defendant also had a brown suitcase on the sidewalk, and that defendant was concerned that his checked luggage might not get aboard the flight in time. Defendant's hands shook visibly. After showing the porter his ticket and requesting that the suitcase be placed aboard the plane, defendant was observed by Johnson to proceed into the terminal with his briefcase, suitbag, and ticket in his hands. Once inside, defendant stopped and set down his luggage, apparently to examine his ticket. Johnson then saw some movement of defend-

ant's hands which caused him to suspect that defendant had plac-
ed the claim check in his pants pocket or down his pants. Defend-
ant then looked around nervously and continued through the
airport.

At this point, Johnson walked over to Detective T.
D'Azevedo of the Dade County Public Safety Department, and
pointed defendant out to him. The two officers then followed
defendant toward the National Airlines boarding area. D'Azevedo
then displayed his badge to defendant and requested that defend-
ant speak with him for a moment. Defendant stopped, and
D'Azevedo asked to see his ticket and identification. Defendant,
pale and sweaty, gave D'Azevedo his ticket and his Florida
driver's license. Defendant's hands shook so violently that he
nearly dropped the license. D'Azevedo turned around and began
writing down the information. Johnson, who was behind defend-
ant, then observed defendant, his hands trembling violently, plac-
ing his hand first into the front of his pants, and then, with what
appeared to be a claim check in his hand, into the back of his
pants. Defendant was wearing tightly fitting jeans. Johnson then
moved in to secure defendant by grabbing both of his arms.
Defendant pulled his hand bearing the claim check from his pants
and Johnson seized it from him.

Meanwhile, D'Azevedo observed that the name on
defendant's ticket, "L. Harris," did not match the name on defend-
ant's driver's license, "Dennis Lombardo." Johnson then left to
obtain the suitcase corresponding to the claim check. In response
to defendant's requests to be released, D'Azevedo told him he
was being detained.

Johnson procured the services of the U.S. Customs narcotic
detector dog unit and after obtaining the suspect suitcase, set it
down among three other suitcases randomly selected. A narcotics
detector dog, "Reggie," then "alerted" to the presence of a nar-
cotic odor coming from the suspect suitcase. Defendant was in-
formed of this and was placed under arrest for possession of an
unknown controlled substance of unknown quantity. Defendant
was placed in a holding cell at the airport's police service office.
Defendant's luggage was transported to Station Three, where
another U.S. Customs narcotic detector dog, "Dewey," "alerted"
to the presence of a narcotic odor emanating from defendant's

briefcase and suitbag. Defendant refused to give his consent to a search of his luggage, and thereafter, a *search warrant* was obtained for the suitcase, suitbag, and briefcase. Upon execution of the search warrant, twenty grams of marijuana were found in the suitcase.

After reviewing these facts and the arguments of counsel, the court concluded that there were "insufficient facts to constitutionally justify the detention and seizure of the person of the defendant and the subsequent search of the defendant's luggage and the seizure of marijuana was unconstitutional," and allowed defendant's motion. The State appealed.

*Attorney General Edmisten, by Assistant Attorney General Frank P. Graham, for the State.*

*Herman E. Gaskins, Jr., and Joel Hirschhorn, for the defendant appellee.*

HEDRICK, Judge.

The sole question presented by this appeal is whether the superior court erred in granting defendant's motion to suppress dated 25 February 1980. We note at the outset that our decision makes it unnecessary for us to discuss whether the Fourth Amendment exclusionary rule is applicable in probation revocation hearings in this State.

A motion to suppress evidence in the superior court must be in writing and must state the grounds upon which it is made. G.S. § 15A-977(a). The motion to suppress made by defendant in the present case in the superior court of this State was indeed in writing, and stated the "grounds" therefor as

[t]he detainment and interrogation of the Defendant at the Miami International Airport on August 28, 1979, and the seizure and search of his baggage were in violation of rights guaranteed to him under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and North Carolina General Statutes Section 15A-974.

Inexplicably, both defendant's motion to suppress and Judge Brown's order allowing it ignore the fact the record before Judge Brown clearly established that the search of defendant's luggage in Miami was made pursuant to a search warrant.

Rather, the motion to suppress seems to have been treated by defendant and the superior court as one to suppress evidence discovered and seized pursuant to a *warrantless* search.

Ordinarily, a search warrant will be presumed regular if irregularity does not appear on the face of the record. *State v. Spillars*, 280 N.C. 341, 185 S.E. 2d 881 (1972); *State v. Travatello*, 24 N.C. App. 511, 211 S.E. 2d 467 (1975), and when the search warrant does not appear of record, it is assumed in all respects regular on appeal. *State v. Shermer*, 216 N.C. 719, 6 S.E. 2d 529 (1940). Furthermore, the wording of the Fourth Amendment would indicate that a valid search warrant is prima facie evidence of the reasonableness of the search. *State v. Turnbull*, 16 N.C. App. 542, 192 S.E. 2d 689 (1972).

In the present case, the search warrant does not appear of record, and the record before us demonstrates that defendant offered no evidence of facts with which to overcome the presumption of regularity of the search warrant or to overcome the resulting prima facie evidence of the reasonableness of the search. Assuming arguendo that defendant's motion to suppress in the superior court did challenge the validity of the search warrant, we are satisfied that the record before us discloses that the Florida officers had reasonable grounds to believe that defendant's luggage contained contraband, *see State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776, *cert. denied*, 444 U.S. 907, 62 L.Ed. 2d 143, 100 S.Ct. 220 (1979); *State v. Tillett*, 50 N.C. App. 520, 274 S.E. 2d 361 (1981), and that their affidavit would be sufficient to support a finding of probable cause for the issuance of the search warrant by the Florida judge. *See State v. Trapper, supra.* We hold that the superior court improperly granted defendant's motion to suppress.

For the reasons stated, the order allowing defendant's motion to suppress is reversed, and the cause is remanded to the superior court for the entry of an order denying the motion to suppress and for further proceedings.

Reversed and remanded.

Judges ARNOLD and WEBB concur.