STATE OF NORTH CAROLINA v. DAVID LOUIS ODUM

No. 9410SC571

(Filed 1 August 1995)

**Searches and Seizures § 27 (NCI4th)— seizure of cocaine at train station—reasonableness of warrantless search**

In a prosecution for trafficking in cocaine, a drug interdiction officer's warrantless seizure of defendant's gym bag at a train station until it could be checked by a drug-sniffing dog was lawful, and the trial court properly denied defendant's motion to suppress cocaine seized from the bag pursuant to a warrant after the dog alerted to the bag, where defendant traveled to and from a source city for narcotics in a two-day period; he traveled with a small gym bag instead of luggage; he paid for the $107 ticket in cash with small bills; the woman identified by defendant as his ride did not acknowledge defendant and later left the train station without him; defendant could not readily produce identification and became visibly nervous; defendant had previously been arrested in New Jersey for attempted armed robbery; and he appeared to be concealing something from the officers while he searched his bag for identification.

**Am Jur 2d, Searches and Seizures § 71.**

**STATE v. ODUM**

[119 N.C. App. 676 (1995)]

Judge GREENE dissenting.

Appeal by defendant from judgment entered 13 December 1993 by Judge Coy E. Brewer in Wake County Superior Court. Heard in the Court of Appeals 1 March 1995.

*Attorney General Michael F. Easley, by Associate Attorney General Robert O. Crawford, III, for the State.*

*Thomasin Elizabeth Hughes for defendant appellant.*

COZORT, Judge.

Defendant was arrested on 29 April 1993 for trafficking in cocaine, after being stopped at the Raleigh train station upon his return from New York City. Defendant's motion to suppress the physical evidence found in his bag was heard in Wake County Superior Court on 10 August 1993 and denied by Judge Robert L. Farmer on 13 December 1993. Defendant pled guilty to the charges on 13 December 1993, reserving his right to appeal pursuant to N.C. Gen. Stat. § 15A-979(b) (1988). Judge Coy E. Brewer accepted defendant's plea and sentenced him to a prison term of seven years and a $50,000.00 fine. Defendant appeals Judge Farmer's denial of his motion to suppress. We affirm.

On 29 April 1993, Special Agents William Weis and Terry Turbeville of the North Carolina State Bureau of Investigation and Wake County Deputy Sheriff Mel Hicks were working drug interdiction at the Raleigh train station. They had earlier received information from a ticket agent that defendant purchased a train ticket with cash using small bills, departed Raleigh for New York City on 27 April, returning on the afternoon of 29 April. In researching defendant's criminal record, the officers discovered that defendant had previously been arrested for attempted robbery in New Jersey, a charge which was later dismissed.

Agent Weis testified at the suppression hearing that he uses many factors in deciding whom to approach when working drug interdiction. The factors include making quick turnaround times, paying cash for tickets, using small bills when paying, carrying small amounts of baggage, displaying nervousness when buying tickets or when approached by officers, having a criminal record, and traveling from a "source city" for drugs. Agent Weis testified that any major city in the United States would be considered a source city for narcotics.

Agent Weis testified that, in his experience, a combination of these factors means that the person is likely to be carrying narcotics.

Defendant's train arrived at approximately 4:30 p.m. on 29 April 1993. Defendant, a black male wearing glasses and carrying a red nylon bag, matched the description the ticket agent gave to the officers. Defendant left the train and appeared headed toward a car in the parking lot in which a female was sitting. Agent Weis and Deputy Hicks approached defendant, showed him their badges, and asked him to answer a few questions. The officers were dressed in casual clothes and talked in a conversational tone with defendant. Defendant agreed to talk with them, and they moved over to the sidewalk.

Agent Weis asked defendant to produce his train ticket. Defendant showed them his ticket stub bearing his name, "D. Odum." Agent Weis then asked defendant for some identification, but defendant was unable to locate any in his pockets. Defendant became visibly nervous when he could not find his identification. While defendant looked in his bag for identification, Agent Weis observed that defendant was apparently trying to conceal the contents of the bag. Defendant finally told the officers that he could not find any identification.

Agent Weis asked defendant if he could search the bag, and defendant refused a search unless the officers could produce a search warrant. Agent Weis then informed defendant that he was going to seize the bag and hold it until a drug-sniffing dog could examine the bag. Defendant objected, stating the bag contained his personal belongings. Agent Weis nonetheless took the bag, placed it out of defendant's reach, and told defendant that he was free to leave. Agent Weis informed defendant that if he left an address he would have the bag delivered to him. During this time, defendant informed the officers that the woman sitting in the car was his ride. Agent Weis testified that the woman neither spoke nor made eye contact with defendant during the entire questioning. After Agent Weis seized the bag at approximately 4:45 p.m., the woman drove away.

Defendant refused to leave without his bag and waited with the officers for the drug-sniffing dog. While they were waiting, defendant located a North Carolina driver's permit bearing his name and date of birth. Deputy LeBeuf arrived with the drug-sniffing dog at approximately 5:15 p.m. Agent Weis lined up some bags in the baggage storage area, and the dog alerted on defendant's red bag. Agent Weis

informed defendant that he was no longer free to leave. Deputy LeBeuf took the bag to a magistrate, obtained a search warrant, and searched the bag, finding approximately 30 grams of cocaine. He informed Agent Weis, who placed defendant under arrest.

Judge Robert L. Farmer heard defendant's motion to suppress in Wake County Superior Court on 10 August 1993. Agent Weis testified for the State and defendant offered no evidence. Judge Farmer denied the motion in an order dated 13 December 1993. Defendant then pled guilty, reserving his right to appeal. For reasons which follow, we find the trial court did not err in denying defendant's motion to suppress.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In most cases, the seizure of an individual's personal property, such as luggage, requires a judicial warrant issued upon probable cause and particularly describing the items to be seized. *United States v. Place*, 462 U.S. 696, 701, 77 L.Ed.2d 110, 116-17 (1983). The courts have held, however, that certain seizures are valid based on less than probable cause. Because a canine sniff is limited in scope, the United States Supreme Court has held that it is not a search, but that the detention of the bag is a seizure within the meaning of the Fourth Amendment. *Id.* at 707, 77 L.Ed.2d at 121. When a law enforcement officer's observations lead him to reasonably believe that a person is carrying luggage which contains narcotics, the principles of *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889 (1968), permit the officer to detain the luggage briefly to investigate the circumstances which aroused his suspicion, provided that the investigative detention is properly limited in scope. *Place*, 462 U.S. at 706, 77 L.Ed.2d at 120.

The standard established by Terry for testing the conduct of law enforcement officers in effecting a warrantless seizure is that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 20 L.Ed.2d at 906. The circumstances leading to the seizure should not be viewed in isolation. Instead, they should be viewed as a whole "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143 (1979).

Agent Weis testified that there were numerous factors he took into consideration when deciding to approach defendant and seize

the bag. The factors utilized by Agent Weis were: (1) defendant traveled to and from a source city for narcotics; (2) defendant's trip was short in duration; (3) defendant traveled with a small gym bag instead of luggage; (4) defendant paid for the $107.00 ticket in cash with small bills; (5) the woman identified by defendant as his ride did not acknowledge defendant and later left without him; (6) defendant could not readily produce identification and became visibly nervous; (7) defendant had previously been arrested in New Jersey for attempted robbery; and (8) defendant appeared to be concealing something from the officers while he searched his bag for identification. Although the issue presented is an extremely close call, we find the factors identified by Agent Weis, taken together, provide the reasonable suspicion necessary for a seizure.

The United States Supreme Court stated in *United States v. Cortez*, 449 U.S. 411, 418, 66 L.Ed.2d 621, 629 (1981), that a court analyzing conclusions made by a trained officer such as Agent Weis should consider the circumstances "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Our own Supreme Court has also held that the circumstances leading to a seizure should be viewed not in isolation but as a whole, "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979). In his work on the Drug Interdiction Squad, Agent Weis has received specialized training in interdiction procedures and has personally opened almost 200 cases and assisted in hundreds of others. The actions of law enforcement here did not involve personally intrusive procedures to the defendant and indeed did not even involve *his* detention; only his unopened bag was briefly held.

Defendant's behavior was consistent with that of other suspects in drug trafficking situations. His actions, coupled with the refusal of the woman awaiting him to so much as acknowledge his presence or inquire as to why he was being detained before driving away when approached by another officer, also aroused a reasonable suspicion in the mind of Agent Weis. While defendant's behavior and characteristics may seem somewhat "ordinary" to most people, Agent Weis believed his behavior was consistent with that of travelers of a different kind; those who traffic in illegal drugs. "It must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222, 4 L.Ed.2d 1669, 1680 (1960). "And in deter-

mining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20, 20 L.Ed.2d at 905. Agent Weis's actions were reasonable, and we affirm the trial court's decision to deny defendant's motion to suppress the evidence.

Affirmed.

Judge LEWIS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I do not believe the seizure of defendant's bag was based on a reasonable, articulable suspicion, and I would reverse the order of the trial court denying defendant's motion to suppress. The factors that Agent Weis observed, taken as a whole, could easily be associated with many travelers and would therefore subject them to unwarranted and unlawful intrusions into their privacy.

The decision to focus on defendant began when a ticket agent informed the authorities that defendant had purchased a round-trip train ticket to New York City with cash and that the trip was of a short duration. Many travelers embark on similar trips on a daily basis, and the fact that defendant paid for his ticket in cash is not remarkable, considering the price was only $107.00.

The tip caused the officers to run a check of defendant's criminal records which revealed an arrest for robbery, a charge subsequently dismissed. Agent Weis testified that it did not matter to him whether it was a conviction or an arrest. He also testified that there was no record that defendant had any previous involvement with drugs. A prior arrest for robbery that is later dismissed is not a sufficient reflection of an individual's propensity to be involved in drug trafficking. Nevertheless, the officers determined that they would observe defendant upon his return because they suspected him of carrying drugs. Based on what the officers knew at this time, a sufficient basis for a seizure of defendant's bag did not exist.

The officers observed defendant exiting the train and carrying a small gym bag. Although carrying one bag is consistent with the

length of defendant's stay in New York, the officers decided nonetheless to approach defendant. Agent Weis testified that during the course of their discussion, defendant did not give him any false information. The officers never inquired about the nature of the trip, nor is there evidence of any questions that might have bolstered their suspicions. At this point, there was nothing upon which to base a reasonable suspicion.

Defendant became visibly nervous when he could not find his identification. It is not uncommon for an individual to appear nervous when approached by a law enforcement officer. While it is now apparent from hindsight that defendant's nervousness was due to his possession of cocaine, the facts known by the officers at the time, including defendant's nervousness, were not enough to arouse a reasonable, articulable suspicion. Further, the actions of the woman in the car and defendant's reluctance to let Agent Weis see what was in his bag did not provide the level of suspicion to warrant a seizure.