IN THE SUPREME COURT OF NORTH CAROLINA

No. 278PA21

Filed 15 December 2023

STATE OF NORTH CAROLINA

v.

FERNANDO ALVAREZ

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA20-611 (N.C. Ct. App. July 20, 2021), affirming an order entered on 2 December 2019 by Judge Anna Mills Wagoner in Superior Court, Rowan County. Heard in the Supreme Court on 20 September 2023.

*Joshua H. Stein, Attorney General, by Zachary K. Dunn, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Kathryn L. VandenBerg, Assistant Appellate Defender, for defendant-appellee.*

BARRINGER, Justice.

In this case, we are tasked with determining whether the Court of Appeals erred in refusing to address whether officers possessed reasonable suspicion to stop defendant's vehicle. We are further tasked with determining whether the Court of Appeals erred in concluding that the traffic checkpoint did not comply with the Fourth Amendment.

For the following reasons, we hold that the officers had independent reasonable

suspicion and, therefore, did not violate defendant's Fourth Amendment rights. Since the officers had independent reasonable suspicion, we do not reach the constitutionality of the checkpoint. Thus, the trial court erred in granting the motion to suppress and the Court of Appeals erred in affirming the trial court's order. We reverse the decision of the Court of Appeals and remand to that court for further remand to the trial court for appropriate proceedings.

## I.    Background

On 6 June 2018, the Rowan County Sheriff's Office set up a checkpoint at the intersection of Stone and Rainey Roads in Salisbury, North Carolina, from 12:00 a.m. to 2:00 a.m. The checkpoint was in response to a fatal traffic accident in that location.

At approximately 1:45 a.m., defendant came into view of the checkpoint. Deputy Nolan Shue testified, and the trial court found as fact, that defendant's passenger side wheels came off the road and onto the grass before coming to a stop at the checkpoint. Deputy Shue further testified that this observation led him to believe that defendant might be driving while impaired, and that defendant appeared "very nervous and overly talkative," could not stop smiling, and had "glassy eyes."

Based on defendant's driving, demeanor, and appearance, officers initiated a search of defendant's vehicle. During the search, officers discovered cocaine, buprenorphine, marijuana, and drug paraphernalia, for which defendant was later indicted for possessing. Defendant moved to suppress the evidence against him on grounds that it was collected at an unconstitutional checkpoint.

The trial court concluded that the State failed to provide a valid primary programmatic purpose for the checkpoint. Therefore, the State violated the Fourth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution. Accordingly, the trial court granted defendant's motion and suppressed all evidence collected at the checkpoint. The trial court did not address whether the officers had independent reasonable suspicion to stop defendant, despite having heard arguments on independent reasonable suspicion.

The Court of Appeals affirmed the trial court's order, holding that the checkpoint was unconstitutional because the State failed to establish "a valid primary programmatic purpose" for its implementation. *State v. Alvarez*, No. COA20-611, slip op. at 2 (N.C. Ct. App. July 20, 2021) (unpublished). In a brief concurrence, Judges Dietz and Murphy opined that the Court of Appeals should have addressed whether officers had independent reasonable suspicion. *Id.* at 18. However, the Court of Appeals reasoned, "it is unnecessary to address whether officers possessed independent reasonable articulable suspicion." *Id.* at 16. We disagree.

## II.    Standard of Review

In reviewing a motion to suppress evidence, this Court examines whether the trial court's findings of fact are supported by competent evidence and whether those findings support the conclusions of law. *State v. Cooke*, 306 N.C. 132, 134 (1982). Conclusions of law are reviewed de novo. *State v. Biber*, 365 N.C. 162, 168 (2011).

### III. Analysis

"When an officer observes conduct which leads him reasonably to believe that criminal conduct may be afoot, he may stop the suspicious person to make reasonable inquiries." *State v. Pearson*, 348 N.C. 272, 275 (1998). The officer "must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *State v. Thompson*, 296 N.C. 703, 706 (1979) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Reasonable suspicion is an issue independent of the constitutionality of the checkpoint. *State v. Griffin*, 366 N.C. 473, 477 (2013).

Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

> Only some minimal level of objective justification is required. This Court has determined that the reasonable suspicion standard requires that the stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.

*State v. Barnard*, 362 N.C. 244, 247 (2008) (cleaned up).

Here, officers had reasonable suspicion to stop defendant. Deputy Shue articulated in his testimony that defendant's failure to maintain lane control made him "believe that there might be possibly some impaired driving," in violation of

N.C.G.S. § 20-138.1. Further, consistent with the trial court's finding of fact, three officers testified that they observed defendant's vehicle veer out of its lane and "basically run off the road." Thus, officers had reasonable suspicion that defendant's actions constituted a traffic violation under N.C.G.S. § 20-146(d)(1), which requires drivers to remain "within a single lane" and not depart from that lane unless it can be departed safely. *See* N.C.G.S. § 20-146(d)(1) (2021).

Although the trial court found that "[t]he location of the checkpoint played a role in the vehicle's alleged 'failure to maintain lane control,' " this finding appears to be based on Deputy Shue's testimony on the hypothetical use of checkpoints as speed enforcement. Neither Deputy Shue's testimony, nor that of any other witness, supports the inference that placement of the checkpoint contributed to defendant's failure to maintain lane control. Moreover, in closing argument, defendant's counsel conceded that "[w]e have no testimony as to whether or not the checking station might have caused him to look down or something as he was approaching and run off the road."

Officers' observation of defendant as he approached the checkpoint gave them reasonable suspicion based on defendant's failure to maintain lane control and possible impaired driving. The officers had reasonable suspicion to justify stopping defendant. Thus, the officers did not violate defendant's Fourth Amendment rights.

Since we hold that the officers had independent reasonable suspicion to stop defendant, we decline to address whether the traffic checkpoint was constitutional.

We disavow the Court of Appeals' broad statements on traffic stop constitutionality.

## IV.    Conclusion

The officers had reasonable suspicion to stop defendant independent of the traffic checkpoint. Thus, stopping defendant did not violate the Fourth Amendment. Accordingly, the trial court erred in granting the motion to suppress and the Court of Appeals erred in affirming the trial court. We reverse the decision of the Court of Appeals and remand to that court for further remand to the trial court for appropriate proceedings.

REVERSED AND REMANDED.

Justice DIETZ did not participate in the consideration or decision of this case.