STATE OF NORTH CAROLINA v. EDWARD E. BRIDGES AND LINDA B. McGINNIS

No. 7727SC655

(Filed 17 January 1978)

1. **Arrest and Bail § 3— detention without arrest warrant—conditions**

A law officer, not aided by the "stop and frisk" doctrine or the right to stop a motorist, may lawfully detain a person where there is a need for immediate action, if, upon personal observation or reliable information, he has an honest and reasonable suspicion that the suspect either has committed or is

preparing to commit a crime; however, the detention should be reasonable as to time and manner.

**2. Arrest and Bail § 3— warrantless detention of defendant— officer's reasonable suspicion that crime was committed**

Though law officers who detained defendant in S. C. did not have the benefit of either the "stop and frisk" doctrine, because there was nothing to indicate that defendant was armed and dangerous, or the right to stop and investigate for possible violation of motor vehicle laws because this had been done previously in N. C., the officers did have an honest and reasonable suspicion that defendant had committed the crime of larceny, since defendant had been observed circling a residential neighborhood with another person; he had been seen by one of the residents walking down the road carrying something; and an officer who earlier stopped defendant's vehicle for a license check observed fishing rods, a tool box and other property in plain view in the vehicle.

APPEAL by defendants, Edward E. Bridges and Linda B. McGinnis from *Ferrell, Judge.* Judgment entered 10 March 1977 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 6 December 1977.

Defendant Bridges pled not guilty to charges of, on 25 March 1976, (1) breaking or entering a motor vehicle of Kibby Daves and (2) larceny of property therefrom, (3) breaking or entering a motor vehicle of Henry T. Willis and (4) larceny of property therefrom. He was convicted as charged and appeals from judgments imposing consecutive prison terms. Codefendant Linda B. McGinnis was convicted of similar charges, but her motion to withdraw her appeal was allowed.

The State's evidence tended to show that the Daves' vehicle was broken into and entered and property stolen therefrom between 2:00 a.m. and 3:30 a.m. on 25 March 1976, and that the Willis vehicle was broken into and entered during the same night and property stolen therefrom. Both Daves and Willis lived outside Shelby in the Spring Acres development near the South Carolina line.

Brenda Hoyle, a neighbor of the vehicle owners, testified that she was awakened by barking dogs about 2:00 a.m.; she looked out and saw a man walking down the road carrying something; a light-colored station wagon drove up and he got in. She reported the incident by phone to the Sheriff's Department.

Deputy Sheriff Terry Lanier was dispatched to investigate the incident. In the area where Daves and Willis resided he stopped a white 1968 Chevrolet station wagon with South Carolina license plates; Linda McGinnis was driving and defendant was a passenger; he made a license check; in the back of the car he observed two fishing rods, a tool box and other property (at trial identified as property taken from the Daves and Willis vehicles). He let the vehicle go. After getting a radio report about 2:30 a.m., Deputy Skinner returned to Spring Acres about 3:15 a.m. and saw the white station wagon parked at a trailer home; it then left with defendant and McGinnis in it and circled the area for 15 minutes; on one circle the driver appeared to be alone; and on the next circle both were in the vehicle; that the station wagon left about 3:15 a.m., traveled south about 10 miles to a house near Grover, stayed there about 30 minutes, then proceeded across the State line; Deputy Skinner called his dispatcher and requested that he have the station wagon stopped in Blacksburg, South Carolina, and also requested that the Spring Acres area be checked for break-ins. Blacksburg police stopped the station wagon. Deputy Lanier looked and saw in plain view in the station wagon a CB radio, a "fuzzbuster" and a suitcase in addition to the same items he had observed when he first stopped the vehicle near Spring Acres; the vehicle was detained where stopped for about 10 minutes when Deputy Lanier received a radio report from his dispatcher that a truck in Spring Acres had been broken into and a CB radio and a "fuzzbuster" had been stolen. The Blacksburg law officers took defendant and McGinnis into custody and seized the articles in plain view.

The trial judge after *voir dire* found facts and concluded that the articles found in the station wagon were admissible in evidence.

*Attorney General Edmisten by Assistant Attorney General James Peeler Smith for the State.*

*Jerry M. Trammell for defendant appellant Edward Bridges.*

CLARK, Judge.

Detention, or "investigative custody," without probable cause to make a warrantless arrest, is restricted by the Fourth Amendment prohibition of unreasonable search and seizure. *Davis v.*

*Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969). Nevertheless, the criminal who seeks sanctuary within this constitutional right has been exposed by both the federal and state courts in decisions which have recognized the need and the right of the police officer in the performance of his duties under proper circumstance to detain for investigation a person who is not subject to lawful arrest. The circumstances include those created by the mobile and vicious criminal, which circumstances require immediate police action short of arrest. Thus the courts have recognized the right, not dependent on probable cause, (1) to stop and detain for license and registration check and to determine if highway laws have been violated, G.S. 20-183(a); *State v. Dark*, 22 N.C. App. 566, 207 S.E. 2d 290 (1974); and (2) to "stop and frisk" where the circumstances are such that it can reasonably be inferred the individual was armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968); *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973); *State v. McZorn*, 288 N.C. 417, 219 S.E. 2d 201 (1975).

[1]   Where the law officer is not aided by the "stop and frisk" doctrine or the right to stop a motorist, under what circumstance can he detain a suspect or take him into investigative custody? In *Terry v. Ohio, supra*, it is said that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906-907 (1968). In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972), it was held that an officer, upon the basis of information furnished him by a reliable informant, could forcibly stop a suspect. We conclude from the two cases that a law officer, not aided by the "stop and frisk" or the motorist doctrines, may lawfully detain a person where there is a need for immediate action, if, upon personal observation or reliable information, he has an honest and reasonable suspicion that the suspect either has committed or is preparing to commit a crime. We find support for this conclusion in dicta from the following cases: *State v. McZorn, supra; State v. Streeter, supra; State v. Williams*, 32 N.C. App. 204, 231 S.E. 2d 282 (1977), *app. dis.* 292 N.C. 470, 233 S.E. 2d 924 (1977). However, the detention should be reasonable as to time and manner. 6A C.J.S., Arrest, §§ 39, 41.

[2]   In the case before us the law officers in detaining the defendant in South Carolina did not have the benefit of either the "stop and frisk" doctrine because there was nothing to indicate that defendant was armed and dangerous, or right to stop and investigate for possible violation of motor vehicle laws because this had been done previously in North Carolina. And the law officers made no attempt to apply either in their detention. But from the totality of the circumstances, we conclude that the information obtained by the law officers by radio from their dispatcher, their observation of the activities of the defendant and his companion during the night in and near the Spring Acres development, and the property in plain view within the station wagon, were sufficient for the law officers to have an honest and reasonable suspicion that the codefendants had committed the crime of larceny. We hold therefore that the stopping of the defendant and his vehicle and the detention for a period of about ten minutes were lawful, that upon receiving the final report from the dispatcher relative to the breaking and entering of vehicles and larceny of property therefrom the law officers had probable cause justifying a warrantless arrest, and that the property in plain view within the vehicle was lawfully seized and properly admitted in evidence.

No error.

Chief Judge BROCK and Judge MARTIN concur.