STATE OF NORTH CAROLINA v. GEORGE EUGENE SCHULTZ

No. 120

(Filed 24 January 1978)

1. Criminal Law § 111.1— three charges of larceny—guilty of all if guilty of one—instructions

In this trial upon three indictments charging defendant with the felonious larceny of bronze urns and vases from cemeteries, the charge of the court, when considered as a whole, could not have led the jury to believe that it could return a verdict of guilty in all three cases if satisfied, in any one of them, of the defendant's guilt beyond a reasonable doubt, although in one portion of the charge the court did not state with clarity that the three separate cases must be determined separately by the jury.

2. Larceny § 7.3— ownership of stolen property—no fatal variance

There was no fatal variance between indictments charging the larceny of the urns or vases of a cemetery corporation and proof that the urns or vases were not owned by the cemetery corporation but were the property of persons who had purchased from it the burial lots, grave markers, and urns or vases, and that the cemetery corporation had only the custody of them, since it is sufficient if the person alleged in the indictment to be the owner has a special property interest, such as that of a bailee or a custodian.

3. Larceny § 2— cemetery urns and vases—indictments for larceny—insufficiency for convictions under statutes

Indictments charging defendant with the felonious larceny of bronze urns and vases from cemeteries would not sustain a conviction of the defendant under either G.S. 14-80 or G.S. 14-148 since they do not allege certain essential elements of the statutory offenses.

4. Larceny § 2— statute prohibiting theft of cemetery monument—inapplicability to urns and vases

A brass urn or vase which fits into a receptacle in a grave marker and is easily separated therefrom is not a "monument . . . erected for the purpose of designating the spot where any dead body is interred" within the meaning of G.S. 14-148, and its unlawful removal would not constitute a violation of that statute. Thus, the enactment of G.S. 14-148 does not show a legislative intent to remove the theft of such urn or vase from the scope of common law larceny.

5. Larceny § 2— cemetery urns and vases—subject of common law larceny

Bronze urns or vases which were fastened to grave markers by a slight twist so as to make grooves and projections upon the urns or vases fit into prepared slots in a receptacle on the markers and which were easily separated from the markers did not become a part of the markers so as to make them real property or chattels real but remained personal property which was the subject of common law larceny.

APPEAL by the defendant from the Court of Appeals, which found no error on the defendant's appeal to it from *Howell, J.*, at the 29 November 1976 Session of BUNCOMBE, *Clark, J.*, dissenting. The decision of the Court of Appeals is reported in 34 N.C. App. 120, 237 S.E. 2d 349.

By three separate indictments, each proper in form, the defendant was charged with: (1) The felonious larceny of 70 bronze urns, the personal property of Mountain View Memorial Park, Inc., having a value of $3,500; (2) the felonious larceny of 55 bronze vases, the personal property of Mountain View Memorial Park, Inc., having the value of $2,750; and (3) the felonious larceny of 280 urns, the personal property of Ashlawn Gardens of Memories, Inc., having a value of $14,000. The three cases were consolidated for trial and the defendant was found guilty upon all three charges. He was sentenced to imprisonment to five years in each case, the sentences to run consecutively.

The defendant's two assignments of error are: (1) The denial of his motions for judgment of nonsuit; and (2) a portion of the court's charge to the jury which he contends would permit the jury to return a verdict of guilty in all three cases if satisfied, in any one of them, of the defendant's guilt beyond a reasonable doubt.

The evidence of the State was to the following effect:

Mountain View Memorial Park and Ashlawn Garden of Memories own and operate cemeteries in the vicinity of Asheville. The corporations sell cemetery lots and memorials, including granite and marble tombstones and flat, bronze grave markers. They also sell to the purchasers of the lots and markers bronze urns or vases. These and the markers are sold together "as a package deal." Thereafter, the purchaser, not the cemetery corporation, owns them, the cemetery corporation being the custodian or caretaker thereof. The respective urns or vases are containers for flowers and like decorations placed upon the graves. They are so designed and manufactured as to fit into receptacles in the bronze grave markers. To prevent overturning, by wind or accident, they and the receptacles in the grave markers are grooved or slightly slotted so that, when in place, they may be turned slightly and held in an upright position by the interaction of such slots and projections. They are removable by a simple reverse twist and lifting.

On the night of 5 June 1976, 55 such urns or vases were removed, without permission, from the Mountain View Memorial Park, these having a fair market value of $2,800. On 29 June 1976, 83 such urns or vases were removed, without permission, from the Mountain View Memorial Park, these having a fair market value of $4,300. On or about 27 September 1976, 391 such urns or vases were removed, without permission, from the Ashlawn Garden of Memories, these having a fair market value of between $16,000 and $20,000.

On the nights upon which these urns or vases were so taken from the cemeteries, the defendant and his companions went to the cemeteries in his automobile and, in short periods of time, removed the urns or vases, placed them in the trunk of the defendant's automobile and carried them away, their purpose being to "make some easy money." On the following day, in each instance, the defendant carried the urns or vases to different dealers in scrap metal and sold them, dividing the proceeds with his associates. When the thefts were discovered and reported in the newspaper, the purchasing dealers notified the police and turned over to them the articles so purchased by them from the defendant and his associates.

The basis for the defendant's motion for judgment of nonsuit is his contention that the urns or vases, when in place upon the grave markers, were not personal property and, therefore, were not subject to common law larceny, the offense charged in the respective indictments.

*Rufus L. Edmisten, Attorney General, by Patricia B. Hodulik, Associate Attorney, for the State.*

*Max O. Cogburn, Jr., for the Defendant.*

LAKE, Justice.

[1] The defendant's assignment of error directed to the charge of the court is without merit. Standing alone, the paragraph to which he excepts is not a model of clarity and, perhaps, the jury might have concluded therefrom that if it found, from the evidence and beyond a reasonable doubt, that on either of the times in question the defendant, acting alone or with his alleged associates, took and carried away the property of the cemetery

without authority and with the requisite intent, and such property was worth more than $200.00, it should return a verdict of guilty of felonious larceny in all three cases. However, portions of a charge to the jury must be read contextually. *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1971); *State v. Lee*, 277 N.C. 205, 214, 176 S.E. 2d 765 (1970).

The entire charge was relatively short. Immediately after the paragraph to which the defendant excepts, the court said:

"Now in this case you may return one of two verdicts in each case. You may return a verdict of guilty of felonious larceny or not guilty with respect to each of the three cases, which, as I told you earlier, you will consider as separate and distinct cases."

At the outset of the charge, the court said:

"Now, ladies and gentlemen of the jury, each bill of indictment charges a separate and distinct offense. You must decide upon each bill of indictment separately on the evidence and the law applicable to it uninfluenced by your decision as to any other bill of indictment. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each charge must be stated in a separate verdict."

In at least two other portions of this brief charge, the court clearly stated that the State must prove beyond a reasonable doubt the elements of felonious larceny "in each case" and that the jury must consider the evidence of the defendant's possession of the stolen urns or vases, soon after they were stolen and under circumstances such as to make it unlikely that he obtained possession of them honestly, in deciding whether or not the defendant is "guilty of larceny in any of these cases."

The defendant is correct in saying that when, in his charge to the jury, the trial judge makes conflicting statements of law, one correct and the other incorrect, a new trial must be granted since the jury cannot be expected to know which of the two conflicting instructions is correct and it cannot be determined which of the instructions it followed. *State v. Harris*, 289 N.C. 275, 221 S.E. 2d 343 (1976). This well established rule has no application to this case, however, since here the complaint is not of two inconsistent

statements of the law but is simply that in one portion of the charge the court did not state with clarity that the three separate cases must be determined separately by the jury. That confusion, assuming it to exist, was completely clarified in the other portions of the charge. We agree with the majority of the Court of Appeals that it is inconceivable that the jury was confused as to the necessity for its separate consideration and determination of the three charges against the defendant in this case.

[2] The defendant's motion for judgment of nonsuit should have been granted if, as he contends, the evidence is not sufficient to support a verdict of guilty of the offense charged in the indictment. *State v. Jackson*, 218 N.C. 373, 11 S.E. 2d 149 (1940). Each of the indictments upon which he was tried charges him with common law larceny of the "personal property" of the cemetery corporation. The evidence was that the urns or vases, taken by the defendant, were not owned by the cemetery corporation but were the property of the persons who had purchased from it the burial lots, the grave markers and the urns or vases, the cemetery corporation having only the custody of them.

"If the proof shows that the article stolen was not the property of the person alleged in the indictment to be the owner of it, the variance is fatal and a motion for judgment of nonsuit should be allowed." *State v. Eppley*, 282 N.C. 249, 192 S.E. 2d 441 (1972). Accord: *State v. Spillars*, 280 N.C. 341, 185 S.E. 2d 881 (1972); *State v. Thompson*, 280 N.C. 202, 216, 185 S.E. 2d 666 (1972); *State v. Brown*, 263 N.C. 786, 140 S.E. 2d 413 (1965); *State v. Law*, 227 N.C. 103, 40 S.E. 2d 699 (1946). It is, however, sufficient if the person alleged in the indictment to be the owner has a special property interest, such as that of a bailee or a custodian. *State v. Hauser*, 183 N.C. 769, 111 S.E. 349 (1922); *State v. Allen*, 103 N.C. 433, 9 S.E. 626 (1889).

Thus, in respect to the ownership of the property taken by the defendant, there was no fatal variance between the indictment and the proof. The defendant does not contend to the contrary. His contention is that the urns or vases were so attached to the realty as to make them part thereof, or chattels real, and, therefore, not a subject of common law larceny and that this variance between the indictments and the proof is fatal.

In *State v. Jackson*, supra, this Court, speaking through Justice Barnhill, later Chief Justice, said:

"Larceny at common law was confined to 'goods and chattels'; it did not extend to land, because land could not be feloniously taken and carried away, except insignificant parcels thereof. *S. v. Burrows,* 33 N.C. 477; 36 C.J., 736, sec. 6. It, as a common law offense, is concerned with personal property only, and its nature has not been altered by the statutes making it larceny to steal things affixed to realty and severed therefrom by the thief. 36 C.J., 736, sec. 6. Therefore, it was not larceny at common law, to steal anything adhering to the soil. *S. v. Burrows,* supra; 17 R.C.L. 33." 218 N.C. at 375.

In the Jackson case, the defendant was indicted for common law larceny of a tombstone. The evidence was that, without the knowledge or consent of the widow of the deceased, whose grave was marked by the tombstone, the defendant went to the cemetery lot and removed the tombstone therefrom, it having been erected at the grave. Holding that there was a fatal variance between the proof and the indictment, this Court said:

"The thought underlying the erection of a tombstone or marker at the grave of a deceased person is that of permanency. Its purpose is to designate the spot where the deceased was buried, to perpetuate his name and to record biographical data as to birth, death, etc. When so erected it becomes a chattel real and is not the subject of the common law crime of larceny." 218 N.C. at 375.

The Court in the Jackson case held that the motion for judgment of nonsuit should have been allowed with leave to the State to send to the grand jury another bill charging the defendant with violation of G.S. 14-80 or G.S. 14-148. G.S. 14-80 provides:

"If any person, not being the present owner or bona fide claimant thereof, shall wilfully and unlawfully enter upon the lands of another, carrying off or being engaged in carrying off any wood *or other kind of property whatsoever,* growing or being thereon, the same being the property of the owner of the premises, or under his control, keeping or care, such person shall, if the act be done with felonious intent, be guilty of larceny, and punished as for that offense; and if not done with such intent, he shall be guilty of a misdemeanor." (Emphasis added.)

G.S. 14-148 provides:

"If any person shall unlawfully and on purpose, remove from its place any monument of marble, stone, brass, wood or other material, erected for the purpose of designating the spot where any dead body is interred, * * * he shall be guilty of a misdemeanor."

[3] Indictments in the present case would not sustain a conviction of the defendant under either of these two statutes since they do not allege certain essential elements of the statutory offenses. Consequently, the defendant's motion for judgment of nonsuit should have been allowed if the urns or vases taken and carried away by him were chattels real or, otherwise, part of the real property.

[4] In our opinion, a brass urn or vase, of the type here involved, is not a "monument * * * erected for the purpose of designating the spot where any dead body is interred" and therefore, its removal, under the circumstances of this case, would not constitute a violation of G.S. 14-148. That statute deals with the removal of a monument in its entirety, not with the defacing thereof or the removal of a part thereof, if such urn be deemed a part of the marker upon which it rests. Thus, the enactment of G.S. 14-148 does not show a legislative intent to remove the theft of such urn or vase from the scope of common law larceny.

[5] It seems clear that the bronze grave markers, upon which the urns or vases here in question rested at the time of the removal by the defendant, were so affixed to the soil as to make them parts of the realty and not subject to common law larceny. While the evidence in the present case is to the effect that such urns or vases are, habitually, sold to the owner of the cemetery lot at the same time as the grave marker, as part of a "package deal," and although they are fastened to the marker by a slight twist so as to make grooves and projections upon the urn or vase fit into prepared slots in the receptacle which is part of the marker, the urn or vase, itself, is not a part of such marker. The marker serves its contemplated purpose whether or not the urn or vase is so affixed. The urn or vase serves its contemplated purpose as a container for flowers or other decorations, whether or not it is so affixed to the marker. The sole purpose of the attachment to the marker appears to be to prevent a casual overturning

of the urn or vase by wind or accident. The evidence makes it quite clear that on their several visits to the respective cemeteries, the defendant and his associates removed, within a short space of time, large numbers of these urns or vases. Thus, it is clear that they were quite easily separated from the grave markers. Obviously, when originally put in place, the owner contemplated their remaining so in place. Nevertheless, under all the circumstances, we are constrained to hold that the urns or vases did not become so attached to the grave markers, upon which they rested, as to make them integral parts of such markers and, therefore, real property or chattels real. We think they are clearly distinguishable from the tombstone involved in *State v. Jackson, supra*, it having been erected at the grave, presumably in the customary manner of a burying of the base thereof in the soil so that the soil, itself, held the stone erect.

We hold, therefore, that the urns or vases, alleged in the indictment and shown by the evidence to have been taken and carried away by the defendant, were personal property at the time of such taking and, therefore, the motion for judgment of nonsuit was properly denied.

No error.