STATE OF NORTH CAROLINA v. PAUL EMANUEL DOUGLAS

No. 8020SC1023

(Filed 5 May 1981)

1. **Searches and Seizures § 12– investigatory stop – reasonable suspicion of criminal activity**

    An officer had an articulable and reasonable suspicion that defendant was engaged in criminal activity so as to justify an investigatory stop of a car driven by defendant where the officer observed at 12:34 a.m. that the car's trunk lid was tied down over a washing machine and that another white appliance, a dryer, was in the rear passenger area of the vehicle, and where the officer was aware of several prior thefts of washers and dryers from a nearby mobile home dealer.

2. **Searches and Seizures § 34– items in vehicle – seizure under plain view rule**

    A washer and dryer were lawfully seized from defendant's car without a warrant pursuant to the plain view rule where an officer made a proper investigatory stop of defendant's car, and the seizure of the washer and dryer occurred after the officer had been informed by another officer that a washer and dryer had been removed from a nearby mobile home.

3. **Burglary and Unlawful Breakings § 2– breaking or entering a building – mobile home on dealer's lot**

    An unoccupied mobile home not affixed to the premises and intended for retail sale is a "building" within the meaning of the statute prohibiting the breaking or entering of buildings, G.S. 14-54.

4. **Larceny § 6.1– identity of stolen items**

    The manager of a mobile home dealership was properly permitted to describe pillows, curtains and a bedspread found in defendant's car as being identical to those taken from a mobile home on the dealer's lot.

    Judge BECTON dissenting.

APPEAL by defendant from *Mills, Judge.* Judgment entered 5 June 1980 in Superior Court, STANLY County. Heard in the Court of Appeals 5 March 1981.

Defendant was indicted on charges of breaking or entering, and larceny and receiving. The jury returned verdicts of guilty of felonious breaking or entering, and of felonious larceny.

The State's evidence tended to show that at 12:34 a.m. on 5 March 1980 Officer J.E. Galliher of the Albemarle Police Department stopped an automobile, driven by defendant and registered in the name of a passenger in the car, containing a washing machine and a pair of curtains in the trunk, and a dryer, two pillows, a set of curtains on curtain rods and a bedspread in the rear passenger area. In response to Officer Galliher's request, defendant was unable to produce his driver's license. Galliher then radioed the Albemarle Police's Communication Department to make a driver's license check on defendant. Galliher also radioed Officer L.C. Ingold to request that Ingold check the Conner Mobile Homes lot, located approximately one-half mile from where defendant's car was stopped, for a possible breaking, entering and larceny of a washer and dryer. While still awaiting the record check, Ingold informed Galliher that a Conner mobile home had been opened and a washer and dryer apparently removed. At this point Galliher advised defendant and the passenger of their *Miranda* rights, seized the vehicle, and took them to the Stanly County jail. Defendant later signed a statement admitting the break-in of the mobile home and the larceny of the washer, dryer, curtains and pillows. The manager of Conner Mobile Homes, Donald Harwood, identified the washer and dryer taken from defendant's car as the property of Conner Mobile Homes by matching serial numbers. Harwood also described the pillows, curtains and bedspread found in the car as being identical to those removed from the mobile home.

Defendant offered no evidence.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Ben G. Irons, II, for the State.*

*Hopkins, Hopkins and Tucker, by Samp C. Hopkins, Jr., for defendant appellant.*

WELLS, Judge.

Defendant's first assignment of error is grounded on the contention that Officer Galliher lacked probable cause to stop and detain defendant and therefore violated defendant's rights under the Fourth Amendment of the United States Constitution. At the *voir dire* examination held for the purpose of determining the basis for probable cause for the stop, Officer Galliher testified that his attention was attracted to defendant's car on 5 March, initially because of a twelve inch piece of cloth hanging out of the trunk over the rear bumper. Galliher also observed that the car's trunk lid was tied down over a washing machine and that another white appliance, a dryer, was in the rear passenger area of the vehicle. These circumstances at the time of night, 12:34 a.m., aroused Galliher's suspicion. Galliher explained that he was aware of several prior thefts of washers and dryers from Conner Mobile Homes, and that he felt it was necessary "to stop the vehicle and advise him that there was in fact something hanging out of the vehicle and to inquire as to what he was doing with the two appliances and material hanging out of the vehicle." Defendant contends that Galliher's suspicions were not sufficiently articulable or reasonable to justify a stop of defendant's vehicle. We disagree.

[1] In appropriate circumstances even absent probable cause to arrest, police officers may temporarily approach and detain an individual for purposes of investigating "possible criminal behavior." *State v. Greenwood*, 47 N.C. App. 731, 735, 268 S.E. 2d 835, 838 (1980), *reversed on other grounds*, 301 N.C. 866, 273 S.E. 2d 438 (1981); *see, State v. Tillett*, 50 N.C. App. 520, 274 S.E. 2d 361 (1981). If a police officer can specify an articulable and reasonable suspicion that criminal activity is afoot, *State v. Streeter*, 283 N.C. 203, 210, 195 S.E. 2d 502, 507 (1973), then a brief stop of the suspicious individual in order to maintain the status quo momentarily while obtaining more information does not violate Fourth Amendment rights. *State v. Thompson*, 296 N.C. 703, 706, 252 S.E. 2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143, 100 S. Ct. 220 (1979). Based on the totality of the circumstances as perceived by Officer Galliher, we hold that Galliher possessed such articulable and reasonable suspicion, *State v. Thompson, supra*, as would justify the investigatory stop of defendant in this case. *See, State v. Greenwood, supra*, at 736-38, 268 S.E. 2d at 838-39; *In re Beddingfield*, 42 N.C. App. 712, 715-16, 257 S.E. 2d 643, 645 (1979); G.S. 20-183(a). Noting that

State v. Douglas

defendant did not appeal from the trial court's finding of fact at the conclusion of the *voir dire* that Galliher was informed of the break-in at Conner Mobile Home within a "very short time" of the stop, we uphold the trial court's conclusion of law that defendant's detention for this short period of time was reasonable and did not violate defendant's Fourth Amendment rights. *See, State v. Bridges,* 35 N.C. App. 81, 239 S.E. 2d 856 (1978).

[2] Defendant also asserts that the washer and dryer were illegally seized by the police and that it was error not to exclude such evidence. Stating the four requisite elements of the plain view doctrine — a prior valid intrusion, inadvertent discovery, a nexus between the items and criminal behavior, and plain view — *State v. Wynn,* 45 N.C. App. 267, 262 S.E. 2d 689 (1980); *see also, Coolidge v. New Hampshire,* 403 U.S. 443, 446, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), *but see, State v. Mitchell,* 300 N.C. 305, 310-11, 266 S.E. 2d 605, 609 (1980) (questioning the requirement that the discovery be inadvertent), defendant argues that two of the elements were not present in this case. Defendant's first contention, *i.e.,* that Officer Galliher was not in a place where he had a right to be, is without merit because of our determination that the investigatory stop of defendant's vehicle was permissible. Defendant's second contention is that the washer and dryer viewed by Galliher were not incriminating in any manner. This contention is without merit because the seizure of the washer and dryer did not occur until after Galliher was informed by Ingold that a washer and dryer had been removed from a nearby Conner mobile home. At that point, a nexus was established between the items and criminal behavior, *State v. Wynn, supra,* and the plain view doctrine applied to justify the warrantless seizure. *State v. Bridges, supra,* at 85, 239 S.E. 2d at 859.

Defendant next assigns error to the admission of defendant's confession into evidence. Defendant bases this assignment on the alleged illegality of the stop of defendant's vehicle, the detention and arrest of defendant, and the seizure of the washer and dryer. As we have already concluded that each of these acts was proper, this assignment is without merit and is therefore overruled.

[3] Defendant's fourth assignment of error concerns the charges contained in the indictment of defendant. Defendant was charged with violating G.S. 14-54, which provides:

§ 14-54. Breaking or entering buildings generally. —

(a) Any person who breaks or enters any building with intent to commit any felony or larceny therein is guilty of a felony and is punishable under G.S. 14-2.

(b) Any person who wrongfully breaks or enters any building is guilty of a misdemeanor and is punishable under G.S. 14-3(a).

(c) As used in this section, "building" shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property.

Defendant asserts that the State's evidence showed only a violation of G.S. 14-56 (Supp. 1979), which prohibits breaking and entering "any railroad car, motor vehicle, trailer, aircraft, boat, or other watercraft of any kind containing any goods, wares, freight, or other thing of value. . . ." Defendant contends that the trial court erred in denying defendant's motion to quash the indictment.

The question presented is whether an unoccupied mobile home not affixed to the premises and intended for retail sale, is a "building" within the meaning of G.S. 14-54. We hold that it is. A mobile home is clearly a "structure designed to house or secure within it . . . activity or property." Such a structure that is uninhabited or under construction also is within the statute's language. The mere fact of a mobile home's capability of being transported from place to place on wheels attached to its frame, should not remove it from the ambit of G.S. 14-54. *See, United States v. Lavender,* 602 F. 2d 639 (4th Cir., 1979).

[4] Defendant's final assignment of error concerns the admission of Donald Harwood's testimony identifying the curtains, bedspread and pillows found in defendant's vehicle as those items missing from the Conner mobile home. On *voir dire* Harwood testified that the items found in defendant's vehicle were the identical color and size as those taken from the mobile home but that he could not "say for a fact that they were ours." After the *voir dire*, the trial judge made findings of fact and concluded that the identification testimony was admissible. There was no error in this ruling. Evidence is relevant if it has any logical

State v. Douglas

tendency to prove the fact in issue. *See, State v. Collins*, 35 N.C. App. 250, 252, 241 S.E. 2d 98, 99 (1978); 1 Stansbury's N.C. Evidence § 77, at 234 (Brandis rev. 1973). Harwood's ability to identify the items was sufficient to provide the basis upon which the jury might reasonably infer that the items found in defendant's vehicle were those taken from the mobile home. *See, State v. Bembery*, 33 N.C. App. 31, 37, 234 S.E. 2d 33, 37, *disc. rev. denied*, 293 N.C. 160, 236 S.E. 2d 704 (1977). This assignment of error is overruled.

No error.

Judge VAUGHN concurs.

Judge BECTON dissents.

Judge BECTON dissenting:

My reading of the record in this case and the relevant case law requires that I dissent. The court's holding that Officer Galliher's warrantless stop of the defendant was based on a constitutionally sufficient and reasonable suspicion that the defendant was engaged in criminal activity is speculative at best and violative of the defendant's Fourth and Fourteenth Amendment rights at the very least. In order to conduct an investigatory stop and detention of an individual, the United States Supreme Court has held that a police officer must have a reasonable suspicion, grounded in articulable and objective facts, that the individual is engaged in criminal activity. *Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979). *See also State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143, 100 S. Ct. 220 (1979); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973). In *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), the Court applied the same principle to police stops of motor vehicles citing with approval the Delaware Supreme Court's opinion that:

a random stop of a motorist in the absence of specific articulable facts which justify the stop by indicating a reasonable suspicion that a violation of the law has occurred is constitutionally impermissible and violative of the Fourth and Fourteenth Amendments to the United States Constitution.

440 U.S. at 651, 59 L. Ed. 2d at 665-66, 99 S. Ct. at 1394.

I find no evidence in the record to support the majority's holding that Officer Galliher had a *reasonable* suspicion, *prior* to stopping the defendant's car, that the defendant was engaged in criminal activity. During direct examination by the State on *voir dire,* Officer Galliher testified to the contrary, strongly suggesting that he had no suspicions: "I followed the 1970 Oldsmobile and stopped it because I wanted to advise the driver that the cloth was in fact hanging out of the trunk." Later on cross examination by defense counsel, Galliher added further, "My purpose in following him, was to inform the operator that he had something hanging out of his trunk *and that was my only purpose.* I was not stopping the vehicle for any traffic violations. I was just going to perform a public service." (Emphasis added.)

The facts relied on by the majority to support finding a reasonable suspicion were that Officer Galliher observed a car with its trunk lid tied down over what appeared to be a washing machine; that a piece of cloth was hanging out of the car's trunk over its bumper; that it was 12:34 a.m. at night; and that Officer Galliher had personal knowledge of thefts from nearby Connor Mobile Homes at various, but unspecified, times in the past. Galliher also testified, however, that the defendant was operating his car properly and was not violating any traffic laws. He further stated that it was not unusual for people to be travelling in and around Albemarle at that time of night: "it's quite congested between the hours of 12 and 1 a.m. due to mill traffic. It is not unusual for traffic to be in that area at this time in the morning." Moreover, nowhere in the record is there any evidence that the thefts from Connor Mobile Homes known about by Officer Galliher were recent thefts, or ones involving a car like the defendant's car, or even ones involving individuals that fit the defendant's general description. At best then, the only truly unusual thing about the defendant or his car that night was that a piece of cloth was hanging out of his trunk over his bumper. In light of the officer's complete testimony on *voir dire,* the facts relied upon by the majority are so commonplace and innocuous that I cannot see how they support a suspicion on the part of the police that the defendant was engaged in any criminal activity.

The facts in this case are distinguishable from the recent North Carolina Supreme Court decision in *State v. Thompson, supra.* In *Thompson,* the court found that the police officer's suspicion that criminal activity was taking place was reasonable and based on specific facts that would give rise to such a suspicion. The facts relied upon were that a van was seen late at night parked in the parking lot of a public boat landing at a time when the lot was not generally in use; that the police had earlier that same evening heard reports of house break-ins in that particular area and that the break-ins were conducted by individuals using a van. Under these circumstances, the police were found to be justified in making an investigatory stop, detention and inquiry of the defendants. *But see* 296 N.C. at 708-10, 252 S.E. 2d at 780-81 (J. Exum dissenting).

In the case at bar, however, the defendant was stopped and detained at a time and place in which it was not unusual for the defendant to be travelling. Officer Galliher had no information at the time of the stop that a break-in at Connor Mobile Homes had occurred, nor was he on alert for a particular car or suspects fitting the description of the defendant. In short, the type and quality of evidence available to the police in *Thompson* giving rise to a reasonable suspicion that criminal activity might be taking place, was unquestionably absent in the case before us.

Officer Galliher's stop of the defendant, then, was not based on a *reasonable* suspicion that criminal activity was afoot. Even if the stop was permissible as a safety stop for the purpose of warning the defendant about the cloth hanging from his trunk, the officer, absent probable cause to detain the defendant, should have made his public safety warning to the defendant as he did, and then let the defendant leave. It was wholly improper for Officer Galliher to ask for the defendant's driver's license. He testified that, "I asked Mr. Douglas for his North Carolina operator's license, because I wanted to insure he, in fact, had an operator's license and to establish his identity." In *Delaware v. Prouse, supra,* the United States Supreme Court specifically held that a police officer without probable cause cannot randomly stop a car and detain its driver in order to check his license and registration; such a stop and inquiry is violative of the Fourth Amendment and is an unreasonable seizure. 440

U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391. *See also United States v. Martinez-Fuerte*, 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). Under the circumstances then, it makes no difference that Officer Galliher learned of the Connor Mobile Homes break-in while still awaiting the license check on the defendant. At the time, the defendant had already been subjected to an unreasonable stop and detention in violation of his Fourth Amendment rights.

For the Fourth Amendment to have any vitality at all, it must be read and enforced to assure private citizens that their rights and expectations of privacy will not be infringed upon by the State based on less than reasonable suspicions of the police officer in the field, however well intending. Freedom to move about in an unrestricted fashion without fear of unreasonable stops and detentions is at the heart of the Fourth Amendment's prohibition against unreasonable searches and seizures. It is in deference to these higher principles that I dissent and would order the suppression of the illegally obtained evidence in question.