STATE OF NORTH CAROLINA v. PAUL EMANUEL DOUGLAS

No. 8120SC57

(Filed 6 October 1981)

1. **Burglary and Unlawful Breakings § 2— breaking or entering a building—mobile home on dealer's lot**

    An unoccupied mobile home located on a dealer's lot is a "building" within the meaning of the statute prohibiting the breaking or entering of buildings, G.S. 14-54.

2. **Searches and Seizures § 12— investigatory stop—reasonable suspicion of criminal activity**

    An officer had an articulable and reasonable suspicion that defendant was engaged in criminal activity so as to justify an investigatory stop of a car driven by defendant to ascertain defendant's identity and to obtain further information as to defendant's possible involvement in criminal activity where the officer observed at 12:34 a.m. that the car's trunk lid was tied down over a white appliance and that another white appliance was in the rear passage area of the vehicle; the officer was aware of several prior thefts of appliances from a nearby mobile home dealer; upon stopping the car the officer saw a washing machine in the trunk and a dryer, curtains and pillows in the rear seat; defendant did not have a driver's license in his possession, so the officer radioed police headquarters to ascertain whether the defendant actually had a license; and before the officer received any information regarding defendant's driver's license, he received a radio message from another officer informing him that a break-in had occurred at a mobile home on the nearby dealer's lot and there was evidence that an appliance had been taken therefrom.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 4 September 1980 in Superior Court, STANLY County. Heard in the Court of Appeals 6 May 1981.

Defendant was indicted in case No. 80CRS1321 with felonious breaking and entering, larceny and receiving. These charges arose from an incident which occurred on 5 March 1980. The indictment charged that on that date defendant broke into a building occupied by Edgie Nell Broadway located in Albemarle, North Carolina, and took therefrom without permission a washer and dryer and other personal property valued at over $400. This property belonged to Conner Homes Corporation. Defendant pled not guilty to the charges. He was tried and found guilty of felonious breaking and entering and felonious larceny.

The court entered two separate judgments: one imposing a ten-year prison term for breaking and entering and the other imposing a ten-year term for felonious larceny. Both of these sentences were to begin at the expiration of the sentences imposed in case No. 80CRS1322. Judgment in No. 80CRS1322 had been entered previously by Judge Mills on 5 June 1980. In that case defendant had been convicted of charges of breaking and entering and felonious larceny which arose from events closely connected to those giving rise to the conviction in this case. Defendant appealed from the judgments entered against him in case No. 80CRS1321.

*Attorney General Edmisten, by Assistant Attorney General Norma S. Harrell, for the State.*

*Hopkins, Hopkins and Tucker, by Samp C. Hopkins, Jr., for defendant appellant.*

MORRIS, Chief Judge.

Immediately prior to trial defendant made an oral motion to quash the indictment against him in case No. 80CRS1321. Defendant alleged in his motion that the warrant failed to charge the proper offense in that the warrant charged defendant under G.S. 14-54 rather than G.S. 14-56. In addition, at the close of all the evidence, defendant made an oral motion requesting the trial court to give the jury special instructions with regard to G.S. 14-56. Defendant assigns error to the trial court's denial of both of these motions.

[1]  Defendant was charged and convicted of breaking and entering a mobile home and of larceny therefrom. Defendant contends that the mobile home was not a "building" within the meaning of G.S. 14-54, but instead was a "trailer" within the meaning of G.S. 14-56.

G.S. 14-54 provides in pertinent part:

(a) Any person who breaks or enters any building with intent to commit any felony or larceny therein is guilty of a felony and is punishable under G.S. 14-2 . . .

(c) As used in this section, "building" shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property.

In comparison, G.S. 14-56 outlaws the "[b]reaking and entering . . . of railroad cars, motor vehicles, trailers, aircraft, boats, or other watercraft" with the intent to commit a felony or larceny therein.

The two crimes carry different penalties. The penalty imposed for conviction under G.S. 14-54 is set by G.S. 14-2 which prescribes a maximum of ten years imprisonment. G.S. 14-56 specifies a maximum of five years imprisonment.

In effect, the question presented by this assignment of error is which statute controls when the subject of the breaking and entering is a mobile home. In a recent case, *State v. Douglas*, 51 N.C. App. 594, 277 S.E. 2d 467 (1981), this Court dealt with this issue. That appeal involved the same defendant and effectively the same incident resulting in the charges in this case. The earlier case was an appeal from a conviction for the felonious breaking and entering and larceny of similar personal property from another mobile home on the Conner premises. Obviously, identical issues were presented on both appeals.

In the earlier appeal this Court held that an unoccupied mobile home not affixed to the premises and intended for retail sale was a "building" within the meaning of G.S. 14-54. We adopt that holding here. The factual situation involved in this case dif-

fers, but immaterially. In this instance the unoccupied mobile home was located at the dealership, but it was not for sale, as it had already been sold to Edgie Nell Broadway.

In holding that an unoccupied mobile home falls under the aegis of G.S. 14-54 Judge Wells stated:

> A mobile home is clearly a "structure designed to house or secure within it . . . activity or property." Such a structure that is uninhabited or under construction also is within the statute's language. The mere fact of a mobile home's capability of being transported from place to place on wheels attached to its frame, should not remove it from the ambit of G.S. 14-54. *See, United States v. Lavender*, 602 F. 2d 639 (4th Cir., 1979.)

51 N.C. App. at 598, 277 S.E. 2d at 470. We agree that a mobile home should be classified as a "building" as defined by G.S. 14-54(c). Obviously, under G.S. 14-54 the "building" broken into need not be occupied. The chief distinction between the categories of items enumerated in each statute is the property of permanence. This property can easily be inferred from the nature of the items listed. It seems to have been the legislative intent that this quality be used to determine under which section different items might be placed. The items listed in G.S. 14-54 denote the qualities of permanence and immobility while those listed in G.S. 14-56 are characterized by a high degree of mobility. A mobile home as used in the sense of a residence distinctly differs in terms of mobility from a "trailer" which is used to haul goods and personal property from place to place or for camping or vacation purposes. The chief quality of the latter is its mobility, while the former is normally anchored to a foundation and left stationary. Thus, we think the warrant and indictment charging defendant with violation of G.S. 14-54 were proper, and there was no error in the trial court's denial of the motion to quash.

G.S. 15A-1231 provides for the tendering of special jury instructions by a party involved in a criminal trial. Section (b) of that statute states in part:

> The failure of the judge to comply fully with the provisions of this subsection does not constitute grounds for appeal unless his failure, not corrected prior to the end of the trial, materially prejudiced the case of the defendant.

Defendant contends that the trial court erroneously denied his motion to have the jury instructed with regard to G.S. 14-56. Having previously determined that G.S. 14-56 is not applicable to the crime with which defendant was charged, defendant's case could not have been prejudiced by the trial court's refusal to instruct as to that statute. This assignment of error is overruled.

[2] Defendant made a pretrial motion to suppress evidence seized by the police from the car he was driving on the night of the alleged crimes and the confession he made while in police custody. At trial Judge Rousseau conducted a *voir dire* examination of several witnesses to determine the admissibility of this evidence. At the conclusion of the *voir dire*, Judge Rousseau ruled that the evidence seized from the car and defendant's confession could be introduced before the jury. Defendant assigns this ruling as error. He argues that the seizure of the stolen items from the car he was driving was the result of an unlawful detention and arrest by the police, and that the confession he gave the police following his arrest was the result of his unlawful arrest. Consequently, he argues both the evidence and the confession should have been excluded.

At the close of the *voir dire* the trial court made the following findings of fact to which defendant has not specifically excepted:

That Officer Galliher was a Police Officer for the Town of Albemarle; that he worked the third shift; that on March 4, 1980, he went to work at 11:00 P.M.; that he was in a uniform and driving a marked patrol car; that about 12:34 a.m., he was going south on North First Street and when he approached an intersection he stopped; that an Oldsmobile was proceeding across the intersection from his left to his right; that as the Oldsmobile went through the intersection, the Officer's headlights were shining directly on the Oldsmobile; that he noticed that the trunk of the automobile was open and that he noticed that a white object appearing to be an appliance was in the trunk; that the trunk lid was tied down; that there was also cloth hanging out of the back of the trunk; that he also observed something white in the back seat; that the Officer knew that in this area of town there were several parking lots and several mobile home lots on

which there had been several breaking and entering and larceny of appliances; that at the place he saw the Oldsmobile, and for several blocks thereafter, it was not well lighted; that the Officer then pursued the vehicle, and in the meantime ran a check of the registration of said vehicle; that he learned that the vehicle was registered to a Cowan of Concord, North Carolina; that while waiting to find a well lighted place to stop the vehicle, and when the vehicle approached a stoplight, a person on the right front seat got out of the car, came to the trunk of the car, and then looked at the patrol car; that as the vehicle proceeded through the intersection, making a right turn, the Officer put on his blue light and siren and stopped the vehicle; that prior thereto, the Oldsmobile had made two or three left and right turns; that after stopping the vehicle, he walked to the vehicle; that he saw cloth in the trunk, an appliance in the trunk, and an appliance in the rear seat; that he also observed curtains and pillows in the rear seat; that as he approached the vehicle to ask the operator for his license and registration, that the operator turned out to be the defendant; that the defendant handed him a registration that belonged to one James Cowan, who was a passenger in the car; that the defendant stated that he did not have his license with him, but attempted to give the Officer the number of his license.

That the Officer then radioed to headquarters to find out if the defendant did have an operator's license; he was advised that the PIN machine had a backlog, and it would be several minutes before he could ascertain the information; that immediately thereafter, he radioed to ascertain if there were any Officers in the immediate area and if so, to check the various mobile home lots in the area; that shortly thereafter, he received a message from another Officer that there had been a break-in at Conner Mobile Homes; and that there had been a snow several days prior thereto, and that there was a print in the snow which the officer thought was made by some appliance being placed on the ground; that he received this notice about the break-in before receiving the information concerning the defendant's license.

That upon receiving the information of the break-in at Conner Mobile Homes, the Officer then placed the defendant under arrest.

Defendant maintains that these facts fail to show that Officer Galliher could have had a reasonable suspicion that defendant was or had been involved in criminal activity when he stopped defendant's car and detained him. Such suspicion was a necessary prerequisite for the police officer to stop and detain defendant for questioning.

In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed. 2d 660 (1979), the Supreme Court held that random stops of automobiles and detention of the drivers thereof for license and registration checks were violative of the Fourth Amendment. The Court qualified this rule by making it inapplicable in situations where there is an "articulable and reasonable suspicion" that a motorist is unlicensed, that the automobile is unregistered, or that an occupant or the vehicle is subject to seizure for violation of the law. Likewise, our Courts have held that police may be warranted in making investigatory stops and detaining the occupants of motor vehicles when the facts would justify the police officer's reasonable suspicion that the occupants of that vehicle might be engaged in or connected with some form of criminal activity. *State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776 (1979); *State v. Tillett* and *State v. Smith*, 50 N.C. App. 520, 274 S.E. 2d 361, *appeal dismissed*, 302 N.C. 633, 280 S.E. 2d 448 (1981); *State v. Greenwood*, 47 N.C. App. 731, 268 S.E. 2d 835 (1980), *reversed on other grounds*, 301 N.C. 237, --- S.E. 2d --- (1981). In so holding in *State v. Thompson*, supra, the Court stated:

The standard set forth in *Terry* for testing the conduct of law enforcement officers in effecting a warrantless "seizure" of an individual is that "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906. In *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed. 2d 612, 617 (1972), the Court reaffirmed the principle of *Terry* that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most

reasonable in light of the facts known to the officer at the time." The standard set forth in *Terry* and reaffirmed in *Adams* clearly falls short of the traditional notion of probable cause, which is required for an arrest. We believe the standard set forth requires only that the officer have a "reasonable" or "founded" suspicion as justification for a limited investigative seizure. *United States v. Constantine*, 567 F. 2d 266 (4th Cir. 1977); *United States v. Solomon*, 528 F. 2d 88 (9th Cir. 1975).

296 N.C. at 706, 252 S.E. 2d at 779.

The facts found by Judge Rousseau and the natural inferences arising therefrom amply show that at the time Officer Galliher stopped defendant he had a "reasonable or founded" suspicion that an occupant of the car which defendant was driving may have been involved in recent criminal activity. In light of this fact, it was reasonable for Officer Galliher to stop and detain defendant briefly to ascertain his identity and to obtain further information as to defendant's possible involvement in criminal activity. The facts show that at the time Officer Galliher first encountered the vehicle which defendant was driving he was aware that in that area of Albemarle there were several mobile home lots in which breaking and enterings and larcenies of appliances from mobile homes had occurred. Officer Galliher was stopped at an intersection when defendant's vehicle drove past. As defendant drove through the intersection Officer Galliher noticed that the trunk of defendant's Oldsmobile was tied down and there was "a white object appearing to be an appliance" in the trunk. Officer Galliher followed the Oldsmobile several blocks to a well-lighted stretch of road before pulling defendant. Upon stopping the car he saw an appliance in the trunk and an appliance in the rear seat. He also observed curtains and pillows in the rear area of the car. Defendant did not have a driver's license in his possession, so Officer Galliher radioed police headquarters to ascertain whether defendant actually had a license. The P.I.N. machine was backlogged so the check took several minutes. In the meantime, Officer Galliher received a message from another officer informing him that he had just discovered a break-in at Conner Mobile Homes, and there was evidence that an appliance had been taken from a mobile home. Officer Galliher received this information before he received any information from police headquarters

regarding defendant's driver's license. He placed defendant under arrest. The totality of the circumstances show that Officer Galliher was justified in stopping defendant's vehicle and detaining him for a license check.

Defendant argues that the police seizure of the appliances, curtains and pillows from the car was illegal, and that this evidence should have been excluded by the trial court.

"In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971), the Supreme Court enunciated four elements of the 'plain view' doctrine as follows: (1) the prior intrusion must be valid; (2) the discovery must be inadvertent; (3) the evidence must be immediately apparent as such; and (4) the evidence must be in plain view." *State v. Wynn*, 45 N.C. App. 267, 268-69, 262 S.E. 2d 689, 691 (1980). Without unnecessarily recapitulating the pertinent evidence, we think that that evidence clearly shows the existence of each of the elements of the plain view doctrine and justifies the seizure of this evidence.

Defendant contends that the first element of the plain view doctrine was not present, because the prior intrusion was invalid in that Officer Galliher had no reasonable suspicion to stop defendant's vehicle and, therefore, the officer was not in a place where he had a right to be. Our previous determination that the investigatory stop and detention was valid answers this contention.

Second, defendant argues that the evidence seized was not "immediately apparent" or incriminating in any way. However, we think there was a definite nexus between the washer and dryer and other evidence seized and the crime charged. This evidence was not seized until after Officer Galliher was informed by Officer Ingold that appliances had just been stolen from a mobile home on the nearby Conner Mobile Home lot. Therefore, under the plain view doctrine, we think the seizure of this evidence was valid, and it was properly admitted at trial.

Finally, defendant argues that the admission of his confession into evidence was erroneous. He bases his argument on the alleged illegality of his detention and arrest by the police. Having already concluded that the investigatory stopping and detention of defendant was valid, and here noting that there was ample

probable cause for his subsequent arrest, we think that defendant's argument is without merit. His statements to the authorities were properly admitted into evidence.

For the reasons stated above, we find that defendant received a fair trial free from error.

No error.

Judges WEBB and WHICHARD concur.