STATE OF NORTH CAROLINA v. GARY BOST

No. 8122SC609

(Filed 2 February 1982)

1. **Burglary and Unlawful Breakings § 1— breaking or entering a building—trailer at construction site**

    A 40 or 50 foot trailer which was "blocked up" and used for the storage of tools and equipment at a bridge construction site constituted a "building" within the meaning of the statute prohibiting the breaking and entering of buildings, G.S. 14-54, rather than a "trailer" within the purview of G.S. 14-56 since it has lost its character of mobility.

2. **Larceny § 7.3— proof of ownership of stolen property**

    The evidence in a larceny case was sufficient to show that tools and equipment stolen from a trailer at a bridge construction site were owned by a construction company as alleged in the indictment where a job supervisor for the company identified the stolen items and testified that they were being used by company employees in constructing a bridge and were stored on the construction site in a trailer with the doors latched.

State v. Bost

APPEAL by defendant from *Cornelius, Judge.* Judgment entered 15 January 1981 in Superior Court, IREDELL County. Heard in the Court of Appeals 17 November 1981.

Defendant was convicted, as charged, of (1) breaking or entering a building in violation of G.S. 14-54(a) and (2) larceny after breaking or entering in violation of G.S. 14-72(b)(2). He appeals from the judgments imposing a prison term of 5 to 10 years for the breaking or entering and a consecutive prison term of 2 to 4 years for the larceny.

Howard Campbell, a witness for the State, testified that he was with defendant and defendant's brother on 20 June 1979. On their return from a fishing trip they stopped at a bridge construction site. He kicked down a door to a trailer, and defendant entered and handed out to him some pumps, motors, shovels, welding gauges, and a jackhammer. They put the items in a car and took them to defendant's house.

Campbell made a confession to Deputy Sheriff Guy Griffin on 30 March 1980.

The trailer was owned by Hickory Construction Company and contained items used in constructing a bridge. The trailer had two doors. A hinge was broken on one door. Both doors were in place and the latches closed when the workers left the site on 20 June 1979. The following morning one of the doors was lying on the ground. The trailer was described by the job supervisor as a "tool trailer . . . a forty or fifty-foot van, a tractor-trailer, with no tractor." Deputy Griffin testified the trailer was "just blocked up, with steps placed at the rear of it."

The defendant offered no evidence.

*Attorney General Edmisten by Associate Attorney William H. Borden for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant appellant.*

CLARK, Judge.

[1] The first question for determination is whether the trailer located on the construction site was a "building" within the meaning of G.S. 14-54(a). Section (c) of the statute provides:

"As used in this section, 'building' shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property."

We would have little difficulty in determining that the storage trailer was a structure designed to house or secure property within it and was thus a building under G.S. 14-54(a) if it were not for the provisions of G.S. 14-56 which make it a crime to break or enter "any railroad car, motor vehicle, *trailer*, aircraft, boat, or other watercraft of any kind, containing any goods, wares, freight, or other thing of value . . . ." (Emphasis added.)

The crime defined by G.S. 14-54(a) carries a maximum penalty of imprisonment for ten years under G.S. 14-2, and G.S. 14-56 proscribes a maximum penalty of imprisonment for five years.

So we are confronted with determining the more difficult question of whether the storage trailer on the construction site was a "building," as charged in the indictment, or a "trailer." If not a "building" as charged in the indictment, there would be a fatal variance between the indictment and the proof. The evidence would not support a conviction under G.S. 14-54, though it might be sufficient to support a conviction of breaking or entering with felonious intent a "trailer" in violation of G.S. 14-56.

A defendant must be convicted, if convicted at all, of the particular offenses charged in the bill of indictment. The allegations and the proof must correspond. A fatal variance may be taken advantage of by motion to dismiss. *State v. Muskelly*, 6 N.C. App. 174, 169 S.E. 2d 530 (1969); 4 Strong's N.C. Index 3d *Criminal Law* § 107 (1976).

The trailer was used for storage of tools and equipment of Hickory Construction Company on the construction site during the building of a bridge. It is a reasonable inference from the evidence that the trailer was mobile in the sense that it could be and probably was pulled from one construction site to another as the construction jobs were completed. While on the construction site for the bridge building job the trailer was "blocked up." The term is not otherwise explained by the evidence, but we interpret it to mean that cement or cinder blocks were stacked under the four corners of the trailer to give it stability.

We think it is clear that a trailer is a structure designed to secure property within and thus could be a "building" within the meaning of G.S. 14-54. It is also clear that the specific use of the word "trailer" in G.S. 14-56 could serve to remove it from G.S. 14-54. Where there are two provisions in a statute, one of which is special or particular and the other general, which if standing alone, would conflict with the particular provision, the special provision will be taken as intended to constitute an exception to the general provision, since the General Assembly is presumed to have intended a conflict. 12 Strong's N.C. Index 3d *Statutes* § 5.8 (1978). But the controlling factor in statutory interpretation is legislative intent. *In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978); *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978); 12 Strong's N.C. Index 3d *Statutes* § 5.1 (1978).

Applying the rule of legislative intent to G.S. 14-54 and G.S. 14-56 we find that "trailer" and other property specifically named in G.S. 14-56 applies to the specifically named property when being primarily used for its intended purpose. G.S. 20-4.01(31)e defines trailers as "[v]ehicles . . . designed for carrying property or persons wholly on their own structure and to be drawn by a motor vehicle . . . ."

In *State v. Douglas,* 54 N.C. App. 85, 88, 282 S.E. 2d 832, 834 (1981), this Court, in ruling that a mobile home was a building under G.S. 14-54, commented that "The chief distinction between the categories of items enumerated in each statute is the property of permanence. . . . The items listed in G.S. 14-54 denote the qualities of permanence and immobility while those listed in G.S. 14-56 are characterized by a high degree of mobility. A mobile home as used in the sense of a residence distinctly differs in terms of mobility from a 'trailer' which is used to haul goods and personal property from place to place or for camping or vacation purposes."

In the case before us the trailer was not being used and not intended to be used by the owner primarily to haul goods and personal property from place to place. It was "blocked up" and not characterized by mobility. Under the circumstances the trailer lost its characteristics of mobility and became a structure used primarily for storage of property so that it attained the status of a building within the meaning of G.S. 14-54 as charged in

the indictment. Whether other "trailers," or "railroad cars" or other items specifically named in G.S. 14-56 qualify as "buildings" under G.S. 14-54 depends upon the circumstances in each case. They may qualify as "buildings" if under the circumstances of their use and location at the time in question they have lost their character of mobility and have attained a character of permanence. There was no error in the trial court's denial of the motion to dismiss for variance.

[2]   Defendant makes the argument that the evidence was insufficient to support the allegation that the property taken belonged to Hickory Construction Company. We find no merit in this argument.

The job supervisor for the Company testified that the tools and equipment taken were used by company employees in building and constructing the bridge, were stored on the site in a trailer with the doors latched. He also identified the property taken. An essential element of larceny is that the property taken must belong to another person.

It is sufficient if the person alleged in the indictment to be the owner has a special property interest, such as that of a bailee or a custodian, or otherwise has possession and control of it. *State v. Schultz*, 294 N.C. 281, 240 S.E. 2d 451 (1978); *State v. Carr*, 21 N.C. App. 470, 204 S.E. 2d 892 (1974).

We find the evidence sufficient for a rational trier of the facts to find proof of the ownership element beyond a reasonable doubt.

We find, after carefully considering all assignments of error and arguments, that the defendant had a fair trial, free from harmful error.

No error.

Judges WHICHARD and BECTON concur.